IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OTILIA SPILCA, individually,
and as assignee of Hermes Cartagena,

        Plaintiff,
vs.                                                                                            No. CIV 13-360 GBW/LFG

MARYLAND CASUALTY COMPANY,

        Defendant/Third-Party Plaintiff,
vs.

HERB-JOY ENTERPRISES.

        Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO COMPEL DISCOVERY**

THIS MATTER is before the Court on Defendant Maryland Casualty Company's ("MCC") Motion to Compel Discovery [Doc. 33]. The Court considered the Motion, Response in opposition [Doc. 46] and MCC's Reply [Doc. 55]. Oral argument is not necessary. Pursuant to D.N.M.LR-Civ. 7.6(a), this matter will be resolved on the parties' submissions. Before addressing the motion to compel, the Court sets out related procedural history.

**Background**

On March 13, 2013, Plaintiff Otilia Spilca ("Spilca"), individually and as assignee of Hermes Cartagena ("Cartagena"), filed a Complaint against MCC in state court for damages for common law insurance bad faith, fraud, negligent misrepresentation, and breach of contract, in addition to claims under the New Mexico Insurance Act and Unfair Trade Practices Act, and a request for declaratory judgment. The Complaint alleges bad-faith refusal to pay a claim on an insurance policy

issued by MCC. [Doc. 2, exhibit.] On April 16, 2013, MCC removed the lawsuit to federal court ("federal lawsuit"). [Doc. 2.]

The federal lawsuit arises from an underlying state court complaint filed by Spilca against Cartagena on November 3, 2009. The initial underlying complaint for "infliction of intentional torts," alleged Cartagena sexually assaulted, battered, and falsely imprisoned Spilca at Cartagena's office at Prestige Enterprises, Inc. ["Prestige"] on July 28, 2007. [Doc. 33, Ex. A, Spilca v. Cartagena, No. D-202-CV-2009-12774] ("state lawsuit"). Following the assault and battery, Spilca stated she fled the premises and contacted law enforcement. Subsequently, Cartagena was arrested, charged, and pled guilty to various criminal charges, including criminal sexual penetration and false imprisonment. [Doc. 33, Exhs. B, F.]

Spilca contends that Cartagena operated Prestige and was her manager on the pertinent date.[1] The parties stipulate that Prestige was insured by a policy issued by MCC, that included an endorsement for liability coverage. [Doc. 15 at 2, ¶ 3.] MCC denied a defense in the state lawsuit [Id., ¶ 6], contending nothing in the complaint triggered any responsibility for it to offer a defense, as the state complaint asserted intentional torts against Cartagena growing out of the sexual assault. According to Spilca, Cartagena and Spilca, through her attorney, "repeatedly demanded that MCC participate" in the state lawsuit and provide a defense for Cartagena. [Doc. 46 at 3.] Spilca asserts

---

[1]The state court judge's subsequent findings of fact with respect to the state lawsuit note that in July 2007, Spilca responded to a job ad placed by Cartagena. Cartagena met with Spilca at his offices on the morning of July 28, 2007. Prestige's policies and practices required all new sales agents to complete a "day of observation" before being formally hired. Spilca, as part of "on-the-job training" or the "day of observation," accompanied Cartagena and other Prestige sales agents during the day of July 28, 2007. Cartagena then directed Spilca to return to the offices with him later on July 28, 2007, to finalize Spilca's employment paperwork, at which point, Cartagena engaged in the unlawful conduct. The state court's findings of fact note that Spilca was not yet an employee of Prestige or Cartagena on July 28, 2007. [Doc. 33, Ex. F, Findings of Fact ¶ 9.]

that MCC filed a response to the claim submitted by Cartagena stating that the insurance policy was cancelled as of July 28, 2007, at 12:01 a.m., roughly fourteen hours before the incident.[2] [Id.] Spilca argues that Cartagena insisted he never requested cancellation of the insurance policy.

On March 4, 2011, nearly 1½ years after filing her lawsuit, Spilca filed an amended complaint in the state lawsuit with the same claims, but adding allegations in the alternative that Cartagena acted negligently. [Doc. 33 at 2, ¶ 2.] MCC still declined a defense, again asserting that Cartagena's intentional torts did not trigger any duty to defend.[3] [Doc. 33, Ex. C at 3.]

On July 26, 2011 in the state lawsuit, Spilca filed a motion for partial summary judgment on liability, arguing that Cartagena sexually assaulted and wrongfully imprisoned Spilca, and in

---

[2]Spilca attached email correspondence to her response between individuals concerning requests to cancel Prestige's insurance policy, effective August 9, 2007. One correspondent responded that the policy was canceled "for 7-28-2007." [Doc. 46-1, Ex. 1.] Another email asks an individual to cancel the insurance policy for Cartagena and Prestige, effective 7/28/07 and states: "LEFT BUSINESS!" The email request is dated August 7, 2007. [Id., Ex. 2.] The policy's effective date was 3/1/07, and due to expire one year later. A cancellation processing notice indicates an effective date of 7/28/07 and that the reason for cancellation was "Insured Replaced Elsewhere." [Id., Ex. 3.] There is a letter to Cartagena from the insurer, dated August 5, 2010, noting that MCC reviewed the state lawsuit complaint and the policy and determined there was no duty to defend or indemnify him. This letter states that the policy was canceled effective 7/28/07 12:01 a.m. local time. [Id., Ex. 7.] There is a statement of Cartagena, dated September 29, 2010, noting he filed a claim for insurance coverage in relation to the state lawsuit. Cartagena authorized the insurance company to deliver a copy of the policy to Spilca's law firm. [Id., Ex. 6.] There seems to be a dispute whether Cartagena requested cancellation of the policy or if he signed a request for cancellation. [Doc. 46 at 5.] Yet, there is a stipulation in the federal lawsuit regarding MCC's insurance policy. [Doc. 15.] Moreover, the request to add a third-party defendant alleges that Herb-Joy Enterprises somehow was responsible for the request to cancel the insurance policy at issue. [Doc. 30.]

[3]Nothing in the amended complaint explains how the sexual assault could have occurred as a result of negligence. At a hearing before the state court judge, Spilca's attorney argued that "the law is actually subsumed in negligence duties inside the intent . . . ." [Doc. 33, Ex. C at 4.] Counsel appeared to be arguing that the intentional torts somehow included or subsumed negligent conduct.

addition, "negligently inflict[ed] both bodily and emotional harm." [Doc. 33, Ex. B.] Cartagena was not represented by counsel and did not respond to the motion for partial summary judgment.

On October 25, 2011, the state court judge conducted a hearing on Spilca's motion for partial summary judgment. Cartagena appeared *pro se*. [Doc. 33, Ex. C at 5.] Spilca's attorney requested judgment on the negligence claims, arguing in part, that Cartagena owed a duty to Spilca that he breached. [Id.] The issue of intent was discussed at the hearing. The state court judge confirmed with Cartagena that he entered a plea of guilty to the criminal charges, therefore, admitting intent. [Id.] Cartagena was unclear but appeared to argue he did not intend to admit he acted intentionally when he entered an Alford plea. [Id. at 8-9.]

On November 3, 2011, the state court judge entered an order granting Spilca's motion for partial summary judgment "as to her claim of negligence" against Cartagena. [Doc. 33, Ex. D.] On April 23, 2012, the state court judge held a bench trial on damages. Again, Cartagena appeared *pro se*. [Id., Ex. E.] Counsel for Spilca informed the judge that Cartagena was a "very intelligent defendant" who fully understood the proceeding. Counsel for Spilca stated he had spoken to Cartagena before the hearing and relayed to the court that Spilca was uncomfortable being present at the hearing and preferred to leave. Spilca's attorney also told the court that counsel did not see much point in Cartagena's presence during the bench trial and asked, on Cartagena's behalf, that he be excused. [Id., Ex. E at 1-2.] Cartagena confirmed that he did not want to be present, stating Mr. Kennedy's "pedigree [was] much higher than [his]" and so, Cartagena did not need to remain for the hearing on damages. [Id.] The state court judge explained to Cartagena that he was waiving his right to cross examine the witnesses and allowed him to leave. [Id. at 3.] The state court judge received evidence on damages.

4

As Cartagena was not there, he called no witnesses, did not testify, did not cross-examine adverse witnesses, and did not present any evidence to dispute Spilca's claims. Indeed, the court specifically found that "[n]o evidence was introduced at the hearing to contradict or rebut the testimony of Plaintiff Spilca or Dr. Rose" and that "[n]o evidence was introduced at the hearing regarding any contributory negligence on the part of Plaintiff Spilca." [Doc. 3, Ex. F, Findings of Fact, ¶¶ 38, 39.]

On May 9, 2012, the state court issued findings of fact and conclusions of law, after hearing evidence at the damages hearing and reviewing Spilca's requested factual findings and legal conclusions. [Id., Ex. F.] The state court judge found, *inter alia*, that as a result of Cartagena's negligence, Spilca suffered and continued to suffer long-term psychological and emotional damages. [Id., Findings of Fact, ¶ 40.] The state court judge recited legal standards applicable to general negligence, concluding that Cartagena, through his negligence, breached his duty to protect Spilca and provide a safe workplace for her. [Id., Conclusions of Law, ¶¶ 1-4.]

Spilca requested and the court awarded $3,000,000 in compensatory damages, and another $3,000,000 in punitive damages. On July 3, 2012, in return for a complete release and an agreement by Spilca not to seek collection of any portion of the $6,000,000 from him, Cartagena executed an

"Assignment of Proceeds, Contractual Rights and Causes of Action" to Spilca.[4] [Doc. 33, Ex. G.] On July 6, 2012, the state court judge entered an Order of Judgment against Cartagena and in favor of Spilca to recover a total sum of $6,000,000. [Id., Ex. H.]

Thus, in accord with the assignment, Spilca, the victim in this case, made no effort to and did not collect any portion of the $6,000,000 judgment from Cartagena. Instead, based on Cartagena's assignment of rights, Spilca filed this lawsuit against MCC. [Doc. 2, Ex.]

## Motion to Compel

A.     **Summary of Positions**

MCC seeks to obtain discovery by requests for production and interrogatories, many of which ask for information as to Spilca's medical treatment, documents reviewed by Spilca's medical

---

[4]In the federal lawsuit, MCC took Cartagena's deposition on September 17, 2013. According to MCC, Cartagena testified that the sexual assault of Spilca was intentional and not the result of inadvertence or mistake. (The deposition transcript was not provided with this briefing.) MCC further asserts that Cartagena testified that he felt pressured by Spilca's attorneys to cooperate with them in the state lawsuit "because of the probation and restitution issues he faced in the criminal case." [Doc. 55 at 5.] MCC notes statements by Spilca's attorneys at a June 11, 2012 hearing in Cartagena's criminal case, before the Assignment and Judgment were entered in the state lawsuit, indicating Spilca's objections to Cartagena's motion to terminate his probation six weeks early. [Id.] MCC refers to its response to the motion for protective order and attachments of the probation hearing transcript [Doc. 47, ¶¶ 22, 23]. Cartagena purportedly testified in his deposition that Spilca's attorney told him after the damages hearing in the state lawsuit that Cartagena had to sign the Assignment and that he did sign it, in part, to cooperate with Spilca's attorney in the hopes Plaintiff's counsel would be more lenient with regard to Cartagena's probation issues. MCC attached a letter, dated October 7, 2010, from Cartagena's probation officer to a state court judge, noting that the officer could not get a response from Spilca regarding restitution. Thus, the officer recommended that Cartagena be relieved of his restitution obligation unless Spilca came forward during the period of probation. [Doc. 55, Ex. 1.] MCC claims Cartagena was essentially at the mercy of Spilca and her attorneys for the duration of the state lawsuit, in terms of the consequences of his criminal conviction. [Doc. 55 at 6.]

expert in the state lawsuit, and support for the compensatory damage award of $3,000,000.[5] [Doc. 33 at 6-7.] Spilca objected to answering some of the interrogatories and producing some of the requested documents. Spilca does not dispute that she declined to respond to certain discovery requests. Instead, Spilca contends that MCC is not entitled to documents that were or could have been produced in the state lawsuit. She further asserts that MCC essentially wants an opportunity to re-litigate the sexual assault and false imprisonment case in state court but that such re-litigation is barred by res judicata and collateral estoppel. [Doc. 46 at 3.]

MCC argues that ample authority supports its position that the judgment and damages award in the state lawsuit are not binding in the federal lawsuit; and further, that MCC may contest the reasonableness and enforceability of the state court judge's findings, conclusions, judgment, and damages award. [Doc. 33 at 2.] In support of its position, MCC also accuses Spilca's attorneys of potential manipulation of the adversary system by amending her state court complaint to add a negligence claim even though the specific conduct alleged could reasonably only be understood as intentional in nature. MCC further notes that the judgment and damages award in the state lawsuit were not products of a true adversarial process but instead, merely "rubber-stamped approvals" of Spilca's proposed findings, etc., since Cartagena presented no defense. MCC also raises concerns of possible collusion by Spilca's attorneys based on some of the allegations and summary of proceedings discussed above. [Doc. 33 at 16-18.]

---

[5]MCC should have attached copies of the interrogatories and document requests, along with copies of the responses and objections, in accordance with D.N.M.LR-Civ. 37.1(a), (b). However, the Court will excuse the failure, *see* D.N.M.LR-Civ. 1.7, because MCC set forth the interrogatories and requests in the body of the motion to compel and attached a letter between counsel regarding Spilca's responses an objections [Doc. 33, Ex. I]. Thus, the Court has sufficient understanding of the discovery demands and objections to rule on the motion to compel.

Spilca asserts that MCC "misstates the law, misstates the facts of this case, misstates the facts of the underlying case, and attempts to create a diversion from the real issues at hand." [Doc. 46 at 1.] Spilca answers that MCC's collusion argument is specious and that no such evidence supports the claim. According to Spilca, "unless the [presiding judge] . . . finds that the underlying judicial determination was brought about by collusion, MCC is not entitled to reopen the issue which has been fully and fairly litigated to the best of Plaintiff's ability, given that MCC refused to provide Cartagena a defense." [Id. at 2.] Spilca further asserts that forcing her to engage in discovery on claims she already litigated would be harassing and unduly prejudicial to her, as well as "very distressing and painful." [Id. at 4.]

Spilca primarily relies on the doctrine of collateral estoppel as grounds for refusing to respond to discovery requests. She contends, for example, that all elements are met, including that MCC was in privity with Cartagena and Prestige since MCC provided insurance to Cartagena and Prestige. Spilca argues that MCC "spent the better part of four years avoiding [the] responsibility [of providing a defense for Cartagena]." [Id. at 9.]

In sum, Spilca asserts: "MCC prematurely opposes the collateral estoppel issue and requests that the magistrate permit discovery to which MCC is not permitted, hoping to churn up evidence to contradict the state court ruling, without even having to have the state court ruing declared invalid." [Id. at 13-14.] Such discovery cannot be allowed "in the face of MCC's refusal to participate in the [state lawsuit]." [Id. at 14.]

MCC justifies its decision not to provide a defense in the state lawsuit based on the contentions that the original and amended complaints in the state lawsuit "unambiguously allege intentional conduct excluded by the Policy." [Doc. 55 at 8.] MCC asserts that Spilca cannot avoid an intentional acts exclusion in the policy by alleging negligence. MCC asks that Spilca be required

8

to respond to Requests for Production Nos. 11, 14, 15, 16, 17, 18, 19, 20, and 21, and Interrogatory Nos. 7, 8, and 12. MCC also asks that it be allowed to take Spilca's deposition again after review of the responses to discovery. [Doc. 55 at 11-12.]

### B. Discussion:

In the motion to compel, MCC raises serious concerns about ethical issues, including possible collusion[6] by Spilca's attorney, in the state lawsuit. In her response, Spilca challenges MCC's conduct in refusing to defend the state lawsuit, and additionally asserts the doctrine of collateral estoppel, in particular, prevents MCC from relitigating matters related to the underlying state proceeding. Indeed, the majority of briefing is devoted to a discussion of res judicata and collateral estoppel. The Court does not address these matters as they are more properly before the

---

[6]In support of collusion, MCC cites Continental Cas. Co. v. Westerfield, 961 F. Supp. 1502, 1506 (D.N.M. 1997), *aff'd,* 4 F. App'x 703 (10th Cir. Feb 22, 2001), noting that "[c]ollusion may be found where the evidence demonstrates an absence of conflicting interrests." [Doc. 33 at 13.] The federal district court in Westerfield observed: "[A] stipulated judgment ... which is coupled with a covenant not to execute against the insured brings with it a high potential for fraud or collusion. With no personal exposure the insured has no incentive to contest liability or damages. To the contrary, the insured's best interests are served by agreeing to damages in any amount as long as the agreement requires the insured will not be personally responsible...." Id. at 1505 (citation omitted). Spilca argues Westerfield has no bearing on this litigation and is distinguishable as it concerned a settlement agreement, whereas the underlying state lawsuit was actually litigated in state court. [Doc. 46 at 8-9, 17-18.]

presiding judge,[7] although the Court concludes that neither res judicata nor collateral estoppel preclude the discovery requests or excuse Spilca from answering relevant discovery requests.[8]

Regarding Spilca's position as to the specific discovery requests in dispute, she provides little response other than to argue the doctrine of collateral estoppel. For example, Spilca does not expressly contend in the response that the discovery requests are not relevant under Rule 26 standards or that the information sought is privileged. Generally, Spilca asserts that in addition to satisfying elements of res judicata and collateral estoppel, the discovery sought is burdensome and harassing. [Doc. 46 at 7.]

The Court reviewed MCC's motion and the letter attached as an exhibit referring to the discovery disputes [Doc. 33, Ex. I]. It appears that Spilca either did not answer some of the discovery requests at all or that she objected based on grounds of over breadth, undue burden, and that the requests were not likely to lead to the discovery of admissible evidence. [*See* Doc. 33 at 6.]

General or boilerplate objections, such as these, without more explanation, may constitute a waiver of the responding party's right to object. Howard v. Segway, Inc., 2013 WL 869955, at *3 (N.D. Okla. Mar. 7, 2013) (unpublished) (citations omitted). "Objections must be specific and fully explained or else the requesting party is unable to evaluate the objection's merits and determine whether to challenge it." Id. (citation omitted). *See* Gheesling v. Chater, 162 F.R.D. 649, 650 (D.

---

[7]The Court observes that it does not appear Spilca, as of this date, has filed a potentially dispositive motion on grounds of collateral estoppel or res judicata.

[8]Spilca argues, in part, that "principles of judicial economy and protecting a prevailing party from having to re-litigate a case" should prevent MCC from obtaining discovery. [Doc. 46 at 6.] The Court comments only that the question of res judicata or collateral estoppel must be decided by the presiding judge before such doctrines might impact discoverability of information. While Spilca cites legal authority as to the purposes of res judicata and collateral estoppel, she identified no legal precedent standing for the proposition that the doctrine of collateral estoppel precluded discovery in a given case.

Kan. 1995) (courts look "with disfavor on conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad.") *See also* Mancia v. Mayflower Textile Servs., Co., 253 F.R.D. 354, 359 (D. Md. 2008) (finding that the very act of presenting boilerplate objections to discovery requests, without more, is prima facie evidence of a Rule 26(g) violation).

Moreover, the scope of discovery under the federal rules of civil procedure is relatively broad although not without limits. A "party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). Clearly, the question of discoverability of documents does not mean such information will be admissible at trial. "Relevant [discoverable] information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The Court, however, "must limit" discovery when it finds the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i). The Court also is required to limit discovery if the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. Similarly, the Court will limit discovery, if after balancing the needs and costs of the proposed discovery "outweigh[] its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(ii), (iii).

### 1. *Document Requests:*

Request for Production No. 11 seeks documents contained in Dr. Rose's file relating to her forensic evaluation of Spilca following the incident, including the doctor's CV, billings, medical records, tests, test results, notes, reports and photographs. Some materials were produced.

Request for Production No. 14 asks for documents other than Dr. Rose's evaluation supporting allegations that Spilca was suffering severe and long-lasting psychological and emotional injuries as found by the state court judge. Request For Production No. 15 requests documents supporting the allegation in ¶ 48 of Spilca's proposed findings of fact and conclusions of law in the state lawsuit that her compensatory damages were $3,000,000. Request for Production Nos. 16 and 17 seek medical bills and records relating to the treatment of physical, psychological or emotional injuries, as well as medical records reflecting treatment for physical, psychological or emotional injuries sustained as a result of the attack. Request for Production No. 18 asks Plaintiff to provide a signed medical authorization so that MCC can obtain Spilca's medical records and medical bills for treatment of any physical, psychological, or emotional injuries or illnesses for a 10-year period. Request for Production No. 19 seeks a signed authorization to request Spilca's employment records between 2005 through the present. Request for Production No. 20 seeks an educational record release form, and Request for Production No. 21 requests Spilca's tax returns from January 1, 2007, or an authorization form so that MCC can obtain that information from the IRS. [Doc. 33 at 6-7.]

After careful review of the discovery requests in dispute, the Court concludes that the documents sought by MCC are relevant to the claims and defenses and not privileged. In addition, the Court finds little burden will be imposed on Spilca to produce the information since Spilca's attorney should already possess the information from the state lawsuit. Considering the needs of the federal lawsuit, the amount in controversy, the importance of the issues at stake, and the importance of the discovery in resolving the issues, the Court finds that the factors weigh in favor of responding to the discovery requests in dispute. *See* Fed. R. Civ. P. 26(b)(2)(C). Thus, the Court grants MCC's motion to compel production of documents. The Court clarifies, however, that Spilca

must provide a signed authorization for medical records for a period of five years preceding the July 2007 incident to present. MCC's requests for educational and tax records or authorizations are limited to a period three years before the July 2007 incident to present.

### *2.     Interrogatories:*

Interrogatory No. 7 asks Spilca to provide "complete details" of her physical, psychological and emotional history for the last ten years prior to the sexual assault. Interrogatory No. 8 requests that Spilca identify names and addresses of medical providers who treated her after the date of the incident, and describe the purpose and nature of such treatments and examinations, along with dates. Interrogatory No. 12 seeks an itemized breakdown of medical expenses, physicians, hospital or other expenses for medical treatment caused by the incident.

The Court finds that all of the requested information sought is relevant, not privileged and discoverable. In addition, after weighing the factors set out in Fed. R. Civ. P. 26(b)(2)(C), the Court finds the balance favors discoverability. However, the Court again clarifies that the medical information sought by these interrogatories is limited to a period of five years preceding the April 2007 incident to present.

### *3.     Continuation of Plaintiff's Deposition:*

MCC states that in the interest of moving this case forward, it took Spilca's deposition on August 26, 2013, before having answers to the above-described discovery. It reserved the right to re-depose Spilca after receipt and review of the discovery responses. [Doc. 33 at 7.] It is not clear from the briefing if Spilca opposes this request. However, in the reply, MCC requests that the Court issue an order allowing it to take Plaintiff's deposition after review of the requested discovery. [Doc. 55 at 11-12.]

Provided MCC reserved sufficient time, from that which was authorized, to continue Plaintiff's deposition, the Court permits the continuation of Spilca's deposition.[9]  The deposition, however, is limited to exploration of information provided in the discovery responses ordered by the Court, and may not be used to pursue general discovery.  To the extent MCC already obtained this information from Spilca at the first deposition, the Court does not permit MCC to re-address these matters or to explore other issues it could have raised at the first deposition but did not.

IT IS THEREFORE ORDERED that MCC's Motion to Compel [Doc. 33] is GRANTED consistent with the decision herein.  Spilca must produce the requested documents and authorizations, and respond to the interrogatories by December 16, 2013.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

---

[9] The Court denied without prejudice the parties' stipulated motion to vacate discovery deadlines and the trial date, subject to the parties requesting the trial judge vacate the current trial setting. [Doc. 70.]  However, the undersigned Magistrate Judge will extend the current discovery deadline for the limited purposes of providing the specified additional discovery and for continuing Spilca's deposition.  The continued deposition should be taken by January 17, 2014.