IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OTILIA SPILCA, individually,
and as assignee of Hermes Cartagena,

        Plaintiff,

vs.                                                                                                         No. CIV 13-360 GBW/LFG

MARYLAND CASUALTY COMPANY,

        Defendant/Third-Party Plaintiff,
vs.

HERB-JOY ENTERPRISES.

        Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff Otilia Spilca's ("Spilca") Motion for Protective Order concerning the deposition of Spilca's previous attorney. [Doc. 34.] The Court considered the motion, Defendant Maryland Casualty Company's ("MCC") response in opposition [Doc. 47] and Spilca's reply [Doc. 60]. There is no need for a hearing.

**Background**

Spilca brings this lawsuit against MCC for claims under New Mexico common law bad faith, fraud, negligent misrepresentation, and breach of contract. [Doc. No. 1, Exhibit; Doc. No. 15.] She also asserts claims under the New Mexico Insurance Code and the New Mexico Unfair Trade Practices Act. Spilca seeks declaratory judgment against MCC for bad-faith refusal to pay a claim on an insurance policy issued by Defendant. [Doc. No. 15.] The claims relate to a sexual assault of Spilca by assignee Hermes Cartagena ("Cartagena") that occurred in July 2007, and an insurance policy issued by MCC.

The parties stipulate that Spilca is the assignee of Cartagena, who was the defendant-tortfeasor in a related underlying state court lawsuit (Spilca v. Cartagena, D-202-CV-2009-12774). Cartagena owned or was principal agent of Prestige Management Systems, LLC ("Prestige"). [Doc. No. 36 at 2.] Spilca, a 17-year old woman in 2007, responded to an employment ad at Prestige and met with Cartagena. The same day of the meeting, Cartagena sexually assaulted Spilca and was later convicted. Prestige was supposedly insured by MCC under a general commercial liability policy, although there are facts in dispute about the cancellation of that policy.

MCC refused to defend or indemnify Cartagena in the underlying civil state lawsuit based on policy exclusionary language and its assertion that Cartagena engaged in intentional conduct. Cartagena represented himself in the state lawsuit. Spilca was represented by Darin Foster in the state lawsuit. The present motion concerns the proposed deposition of attorney Foster. Ultimately, Spilca was awarded a judgment in the amount of $3 million in actual damages and $3 million in punitive damages by the state court.

The Court does not set out the complicated procedural history of these two lawsuits, along with criminal proceedings against Cartagena for sexual assault of Spilca, but refers to its recent decision that discusses at length the background of this litigation. [Doc. No. 71.] In addition, the parties' briefing of the motion for protective order includes some of the pertinent procedural history.

## Motion for Protective Order

Spilca brings her motion for protective order under state court Rule 1-026(C)(5). That rule provides authority for a state court to protect a party or person from undue burden, etc. upon a showing of good cause and bar or limit inquiry into certain matters. [Doc. 34 at 1.] The Court presumes that Spilca intended to bring the motion in accordance with a comparable federal court rule, Fed. R. Civ. P. 26(c)(1)(D). The federal counterpart similarly allows a court, for good cause,

to issue an order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense," by forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.

### A. *Spilca's Motion:*

Foster was Spilca's previous attorney in the underlying state lawsuit and was with the Paul Kennedy & Associates law firm that presently represents Spilca in this federal lawsuit. [Doc. 34 at 2.] Foster had primary responsibility for the legal work in the underlying lawsuit. [Id.] Spilca asserts that MCC indicated in the Joint Status Report that it expects to call Spilca's attorney (in the underlying lawsuit) to testify in the federal lawsuit "concerning contracts [sic] with [MCC] and the reason the Complaint in the underlying suit was amended to allege negligence." [Doc. 15 at 9.]

Spilca requests that the Court prohibit MCC from asking questions during Foster's deposition that are "designed to elicit responses that would disclose information" protected by attorney-client privilege or the work product doctrine. [Doc. 34 at 1.] Spilca argues that MCC intends to "go on a fishing expedition" during Foster's deposition "to see what it can find in the mental processes of Plaintiff's counsel in the underlying case." [Id.]

Spilca concedes that Foster's deposition can be taken but argues that he should only be required to respond to fact-based questions in regard to his role in the underlying state lawsuit, and in particular, about any contact he may have had with MCC or potential witnesses in the present federal case. [Id. at 3.] Spilca states that she intends to invoke appropriate privileges during Foster's deposition should MCC ask questions about communications between Foster and his colleagues at Paul Kennedy & Associates, P.C. and Spilca that would elicit Foster's mental impressions, conclusions, opinions or legal theories, or those of his colleagues at the Paul Kennedy law firm. [Id. at 3-4.]

3

Spilca further contends that there has been no waiver of the attorney-client privilege or protected information. [Id. at 5.] Attorney Foster's deposition was originally scheduled for October 1, 2013, but apparently the deposition did not go forward.

### B. MCC's Response:

MCC states it does not intend to elicit protected or privileged information. MCC seeks to ask Attorney Foster about the factual basis for the negligence claim that Spilca added through her amended complaint in the state court action, including the "nature and timing of pressures" allegedly placed on Cartagena to obtain his cooperation in the underlying state lawsuit. [Doc. 47 at 15.] MCC further argues that Spilca did not establish "good cause" for her request that the Court issue a protective order. Moreover, her motion recites nothing more than general principles concerning attorney-client privilege and the work product doctrine. [Id. at 2, 10.]

Like Spilca, MCC sets out some of the underlying facts relating to the state lawsuit. MCC contends that Spilca's initial position, as documented in her motion for partial summary judgment (in the state lawsuit) was that Cartagena engaged in intentional conduct, *e.g.,* Cartagena used physical force to restrain Spilca, forced and compelled Spilca to engage in nonconsensual sexual acts. Notwithstanding allegations of intentional conduct by Cartagena, attorney Foster requested in the summary judgment motion that the state court find Cartagena liable for kidnapping and sexual assault only under a negligence theory. [Id. at 3.]

MCC further asserts that Foster suggested to the state court judge during a hearing that Cartagena disputed (in a deposition) that his conduct was intentional and that Foster, who did not represent Cartagena, referred to a "private conversation" he had with Cartagena about the underlying incident. MCC states that there is no testimony in the deposition transcript indicating that Cartagena disputed his intentional acts with respect to the sexual assault.

At some point in the state court lawsuit, attorney Kennedy began handling Spilca's civil litigation. For example, MCC observes that at the April 23, 2012 damages hearing before the state court judge, attorney Kennedy requested, apparently on behalf of *pro se* Cartagena, that Cartagena be excused from the damages hearing. [Id. at 5.] The state court judge excused Cartagena and then heard testimony and argument by Spilca as to damages.

At a June 11, 2012 hearing in Cartagena's criminal case, the state court judge considered Cartagena's motion to terminate his probation six weeks early. MCC argues that the probation hearing transcript reveals that before Cartagena filed his motion, the State took no position on the motion. However, at the hearing, the State noted its objection based on Spilca's objection. Attorney Kennedy was in the courtroom during the probation hearing and informed the state court judge that he objected to Cartagena's motion because Cartagena was "refusing to cooperate" in the state civil lawsuit by refusing to assign "his cause of action against this insurer on a bad-faith claim," and that this "speaks to [Cartagena's] lack of remorse and lack of rehabilitation." [Doc. 47 at 7.][1] Attorney Kennedy also told the state court judge at the hearing that Kennedy might petition the court to lengthen Cartagena's period of probation if "he continues to be recalcitrant in this regard . . . . He may want to go do his time instead of cooperating in the civil litigation." [Id.]

On July 3, 2012, several weeks after the probation hearing, Cartagena and Spilca signed an Assignment of Proceeds ("Assignment"), which allowed Spilca to bring suit against MCC for any claims Cartagena might have had "in consideration for [Spilca's] agreement not to otherwise execute the Judgment against Cartagena. [Id.]

---

[1] MCC attached portions of the hearing transcripts to its response.

During a September 17, 2013 deposition, Cartagena testified that his sexual assault of Spilca was intentional and not the result of inadvertence or mistake. [Id. at 8.] Cartagena also testified that Spilca's attorneys (Foster or Kennedy) began talking to him about the Assignment when he filed his probation-termination motion. Before the damages hearing, Cartagena stated Foster or Kennedy told him that he would not have to pay any judgment as long as he signed the Assignment. [Id. at 8-9.] Cartagena felt pressured to cooperate with Foster and Kennedy in the underlying state lawsuit because he was on probation and trying to end it early. Cartagena also testified that Foster or Kennedy told him after the damages hearing that he had to sign the Assignment and that he did so, to cooperate with Spilca's attorney in the hopes that her counsel would be more lenient regarding Cartagena's probation issues. [Id.]

MCC contends that Foster amended Spilca's complaint in the underlying state lawsuit to add a claim of negligence after Foster received a copy of the insurance policy at issue. [Id. at 11.] According to MCC, the policy's terms, conditions, and exclusions barred coverage for intentional conduct and the claims alleged in the original underlying state court complaint.

MCC continues to assert that it will not seek protected or privileged information from Foster during his deposition. Instead, MCC argues that it seeks "only factual information related to the issues" described above. [Id. at 13.] In addition, MCC contends that even if the information it seeks were protected, the privilege was waived when Spilca filed the amended complaint in the underlying state lawsuit and this bad-faith lawsuit. [Id. at 14.] MCC asserts that Spilca relied on, made direct and offensive use of, and benefitted from, factual information purportedly supporting a negligence claim against Cartagena by filing the amended complaint for negligence, moving for and obtaining summary judgment based solely on the negligence claim, seeking and obtaining an award of $6 million dollars based only on negligence, obtaining an Assignment from Cartagena, and bringing

the present lawsuit against MCC that alleges MCC acted in bad-faith by not defending Cartagena on the negligence claim. [Id.] Thus, MCC argues that Spilca waived any privilege or protection she had by taking the above-stated affirmative actions for her own benefit.

### C.     *Spilca's Reply:*

Spilca asserts that if MCC does not intend to elicit protected or privileged information, there was no need to brief this motion.  Instead, the parties could have agreed to a stipulated order regarding Foster's deposition provided MCC seeks only factual information. [Doc. 60 at 2.] However, Spilca is not certain if MCC actually intends to ask questions that would elicit protected information, particularly based on MCC's position that Spilca waived the attorney-client privilege and work product protection.

Spilca further states that she cannot demonstrate the exact information she seeks to protect from disclosure because "the protective order sought is for a future deposition, and the precise nature of the questions and information sought is currently unknown . . . ." [Id. at 3.] Spilca explains that she "simply seeks an order setting clear boundaries for the deposition in the instance that [MCC]'s questions veer into protected territory." [Id.] Spilca seeks a protective order "clarifying the boundaries of what Mr. Foster may be required to respond to during his deposition and setting forth a process for handling any disputes about what may be protected." [Id. at 4.]

### Discussion

The problem with the motion for protective order is that it is speculative in nature and essentially seeks an advisory opinion from the Court.  This, the Court cannot do.  *See, e.g.,* Rajala v. Gardner, 2012 WL 1232298, at *12 (D. Kan. Apr. 12, 2012) (unpublished) (finding that "[t]he nature of future deposition questions and the scope of the waiver have not been adequately briefed

by the parties and the court declines to issue an advisory opinion concerning the parameters of the deposition.").

Like Spilca, the Court cannot divine the exact questions that will be asked in advance of a deposition and cannot assess at this time if there will be questions seeking protected information or if there was a waiver of protections. In other words, the Court cannot set "clear boundaries" for counsel before the deposition occurs, other than to reiterate clear law in this District and Circuit.

First and foremost, there is no privilege as to facts. *See, e.g.,* Upjohn Co. v. United States, 449 U.S. 383, 396 (1981) (underlying facts are not protected by the attorney-client privilege); United Phosphorus, Ltd. v. Midland Fumigant, Inc., 164 F.R.D. 245, 248 (D .Kan. 1995) ("Attorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source for discovery by virtue of their license to practice law or their employment by a party."). Thus, so long as a question does not intrude on an attorney's thought process, strategy, or legal advice, the question does not call for disclosure of privileged information.

Moreover, it has long been the law in the Tenth Circuit Court of Appeals and elsewhere that instructions not to answer during the course of a deposition are improper, save for some exceptions. *See, e.g.*, Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995) (counsel may not instruct a deponent not to answer unless necessary to preserve a privilege, enforce a limitation on evidence directed by court, or suspend deposition in order to present motion). *See also* Beller ex rel. Beller v. U.S., 221 F.R.D. 679, 681 (D.N.M. 2003) (*citing* American Hangar, Inc. v. Basic Line, Inc., 105 F.R.D. 173, 174 (D. Mass. 1985)).

Because deposition testimony is taken subject to objection, Fed. R. Civ. P. 30(c)(2), a defending party may state the objection, but the deponent is required to answer. In Dabney, the Tenth Circuit Court stated:

> Under the plain language of Fed. R. Civ. P. 30(d)(1), counsel may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to suspend a deposition in order to present a motion under Fed. R. Civ. P. 30(d)(3).

73 F.3d at 266. Thus, any instruction Spilca's attorney gives to Foster not to answer during a deposition is improper unless it comes within one of the three limitations, and even so, Spilca must then file a motion for protective order.

Thus, if Spilca directs Foster not to answer certain deposition questions based on a legitimate privilege or protection, counsel may have the option of contacting the assigned magistrate judge during the deposition to obtain a ruling, if the Court is available. Counsel also may suspend the deposition in order to promptly file a motion for protective order that sets out the exact nature of the objectionable questions. Based on briefing of the specific issues that arose during a deposition, the Court will then have all the information before it to make a decision.

At this stage of the proceeding, however, the Court cannot make a determination as to whether there is good cause to issue a protective order. Similarly, the Court is unable to grant a protective order as it cannot set hypothetical boundaries for a deposition that has not occurred. Counsel are experienced and well-versed in the doctrines of attorney-client privilege and work product protections and should be able to evaluate what questions intrude on those protections and what questions seek permissible factual information.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Protective Order [Doc. 34] is denied without prejudice to raising it at a later date, if necessary.

_____
Lorenzo F. Garcia
United States Magistrate Judge